Recruits ?? Mr. Weiss, did you intend to leave your files with us? I think we have the pictures. Yes, ma'am. Okay. Next case is number 09-3103. How do you do, please, for the Department of Veterans Affairs?  May it please the Court, I'm Jeff Hensler. I'm representing Petitioner Sylvester Harding. Mr. Harding was a GS-7 purchasing clerk, essentially. He is here contesting his demotion based on a performance-based action by USC Chapter 43. The relevant facts for the key issues are really not that much under dispute. There were two standards, three, but the third is repetitive of the second, that were implicated here that he was demoted under. Under neither of those standards did the agency nor the administrative judge below defend the standards as written. They were impermissibly absolute given the nature of his job. Is your suggestion that there were no standards or that the standards were improper? There were certainly items labeled as standards. They are not, especially on the first standard, they are not descriptive of a means of measurement. To that extent, they are either absolute or absent, but they are certainly there, they are labeled as standards. So there are standards, so what's the problem? You're saying they didn't apply the standards correctly to your client? They did not apply the written standards at all. They acknowledge, and had they done that, we would have arguments about the validity of an absolute standard, especially as applied to a clerical position like this. But the agency and the judge both kind of conceived that you can't really make an absolute standard for this type of work. And what the supervisor did, and testified directly on this point, is she came up with another standard, another numerical standard that said, well, this is how many I would have allowed him to have and still pass the performance approval period. There's nothing wrong with that, is there? There is if you don't tell the person what the standard is, and she did not do that, ever. Well, you know, obviously, we weren't there, and the AJ accredited the witnesses she wanted accredited, discredited those she didn't. There were numerous meetings he was on, and there were weekly evaluations, and you're saying he really had no idea what was expected of him. Is that, I mean, do you have to establish that in order to prevail here? Your Honor, that would normally be a big problem with this type of case. But here, that factual element is not it. That supervisor had no idea, that he had no idea what was expected of him. He knew his assignments. He knew what the work was. He did not know, because the supervisor acknowledges she never told him, this is how your performance during the performance improvement period is going to be measured. Here is what you have to accomplish. Here is how many errors you are allowed. Give me an example of one of the things you cite about how that prejudiced what he didn't know and how he was prejudiced. Well, Your Honor, first of all, I think that's a substantive right, not just a harmful error type test. Under the statute, you're entitled to have the standard communicated to you. So what didn't he know? He didn't know. He did not know that for the first unit, for example, that there was a requirement under that standard where it says that you should prioritize your work. And it had a 30-day time limit that everyone agrees that you met. Further, it says that within that, you should prioritize and not wait until day 30 and get it out as quickly as you can. He did not know that there was going to be a numeric standard of how many times something could have been gotten out sooner, that he did not do that. The supervisor did not tell him, I'm going to let you have three or four of these where you don't get it out on the day that it's possible, and you let it sit for a few days, still within the 30-day. And he never knew that was the standard. I don't really understand. Are you saying that he didn't know what items he was expected to prioritize and not? Or that he didn't know that he should prioritize everything that ought to be prioritized? I don't understand. I'm careful with using the word prioritize because the standard does use that, describing essentially what he has to do. It says he should prioritize. He knew that he should make an effort to get these out, as anyone would. Just because you have 30 days to accomplish, you should not let it sit for 29 days before you do it. But he did not know that there was any kind of numeric measure or numeric standard being applied, as it turns out, after he's denoted there was, that says you're allowed three or four times where you let the slide or something where you had to be reminded to go ahead and get something out. That didn't come from anywhere until after the action had occurred. He was never told that. The supervisor didn't tell him that. And she says she didn't tell him. So it's not in dispute. He knew that I am supposed to do this work. But there's a difference between knowing what your job entails and knowing this is what my performance improvement period requires and this is what my performance measure requires. Because this is not the only work he does. He has to know, and is entitled to know, I've got this many errors I'm allowed here. And if I've made a couple of those errors, then obviously I'm getting close to the limits of that standard. And maybe I need to refocus my energy from over here to over there. And we can't know what the outcome would have been, of course, because he didn't have any way to know that's the actual numeric standard. And he should be able to know this is how they're going to measure what I do during the day. And in addition, he also has to kind of take into account the nature of the performance improvement period. And you're going to have an employee under a performance standard that, as communicated to him, would be absolute. And he's got to figure out, well, am I already sunk because I missed one occasion on that or not? And he's got to figure out how to balance his work. And this employee, he's been in that job less than a year. The supervisor had been the supervisor for less than a year. So it's not like there's a huge history here on either part of knowing how this works. Is that a response of your own? The first standard is the one about the prioritization. It is not until after the adverse action that it is communicated that that language about the prioritization is supposed to be somehow measured. The items that had gotten him on the PIP were going beyond the 30-day time limit in accomplishing that work. And he did what he needed to do, and he got all of them done within that 30-day time limit. The problem, of course, was that he then fails the PIP because there were other occasions, which are really not even detailed, where the supervisor says there were times that he did not get them out as promptly as he should have. Further, there's no communication that that particular sub-element, even if it had been communicated, would have been considered sufficient to fail him under the entire performance standard. And that also gives him the things that the employee has to know at the time they're under the PIP. The second standard, which includes the third standard as well, since they're both linked, is for reconciling purchase card records. There is no standard in the written portion of the statement. And the administrative judge acknowledges in the initial decision that there is no written board decision, that as written, that would be absolute. Now, of course, it is feasible or possible to have legitimate absolute standards, and there are cases that articulate when that can come about. But none of them are applied to high-volume, clerical-type work. And neither did the agency in this case did not try to defend that as a valid absolute standard. And the supervisor essentially agrees that that would be unreasonable to impose an absolute standard on this type of work. So again, what you have is a numeric measure that the supervisor has in her mind, but that she never writes down and never communicates to the employee. And again, this will, in many cases, be a subject for a factual dispute, but not here. The supervisor acknowledges it very directly that, no, I did not tell him this is how I was going to figure out whether he passed the PIP or not. This Court has held repeatedly that the employees have a right to know what the performance standard is, and we should know that before you start doing the analysis of do we think this employee passed the PIP or not. And you can't fix a bad standard after the fact in some circumstances. I know, for example, that the whole thing was that you can't even fix an invalid standard by going through and doing a lot of communication. I just want to make sure I understand. You're saying that the standards that were presented in the performance improvement program shouldn't be counted? The standards in the written performance improvement plan should not be counted because those weren't what were actually used. And that's what the supervisor acknowledged. She essentially is saying, no, that would be an absolute standard as written, and that's not what I was going to apply for this employee. So we don't really have that whole argument about whether it's a reasonable absolute standard or not because nobody seriously contended that it was. So that's the position, that he was not required to comply with the standards in the improvement program? He would have been required, and then we would have had an issue with whether or not those standards were reasonable in the appropriate case law. But they instead gave him unreasonable standards and standards that they acknowledged were unreasonable, and then they actually graded him by an entirely different standard that was never communicated. Are you – in some of those instances, aren't you saying the standard was very too strict? You would have objected to that, and then they gave some give to the standard, and you're saying it's problematic for them to loosen up the standard because they didn't convey that appropriately to him? Is that what we're talking about? That is. If you give him an invalid standard, you no longer are allowed to prevail simply because you say, well, it's invalid, but we actually did something different that we never bothered to tell anybody about. He's got a right to know what the actual measurement is going to be for his performance. And if he doesn't know that, that's not a fair – that's not compliant with the statute that the standards be communicated to him. You can't communicate one standard and then grade him by another and say, well, we communicated a bad standard to you, so that would cure our obligation under that requirement. But are you also saying that the first he came to understand that his supervisor believed he wasn't responding adequately and seditiously in the cases that required it, that he didn't know that until he was presented with the PIP? I want to make sure you're asking prior to the PIP, not during the PIP, but the meetings. Prior to the PIP, I would have to double check directly, but I believe his testimony was that he did not believe that his performance was unacceptable at that point. But then he had two PIPs or one PIP? One PIP. But he also had a pre-PIP, correct? Yes. So you're also saying that during that period he had no basis on which to know what was expected of him? He had no basis – and this isn't a dispute – he had no basis to know what the measure was going to be. He knew that my job was to come in and reconcile these credit card issues. And his supervisor was meeting with him on a weekly basis, telling him what was good and what was bad and what wasn't right. And telling him, you did this right, you didn't do that right. But he had no way to tell, how am I doing? What is it I need to focus on here? He has all his other tasks that he's doing at the same time, not just the ones that he fails the PIP on. And at the end of the day, the agency comes in and says, well, we know the standards we gave you in writing aren't valid, but the supervisor actually did something different that we never told you about, and that should be good enough. And that isn't good enough. I thought it was my question whether he was ever told that he should speed it up in certain areas. Let's hear from the other side. We'll save them the opportunity. Thank you. Mr. Harding. May it please the Court. The decision of the MSPB should be affirmed because it correctly concluded that Mr. Harding violated three valid performance standards of his position. First, he violated the performance standard that required him to prioritize orders based on the item that was being ordered. Essentially, what the standard was requiring was that he prioritize the orders based on how necessary they were for the veterans to receive them. There were items that were needed for veterans in order to be discharged from the hospital. There were items that were needed for veterans in order to be able to heal from whatever wound they were. Do you understand the other side's argument? What do you understand the other side's argument to be with respect to prioritization? Is it 30 days he wasn't prioritizing enough that he didn't realize that prioritizing meant that he had to do something? I think there's a little bit of disconnect between the argument that the opposing counsel is making. What he does address is that what Mr. Harding was not informed was that there was some leniency applied to the prioritization standard in the fact that his supervisor allowed him to err three or five times before making that determination. Actually, in the record, it's established that that leniency was applied to the second performance standard, the reconciliation within the 10 days. So that leniency was not applied to the prioritization standard. The prioritization standard, my understanding of opposing counsel's argument, is that Mr. Harding was not informed that he needed to prioritize, and therefore that expectation was something that he wasn't working to achieve. The record establishes on numerous occasions that not only was Mr. Harding aware of the fact that he needed to prioritize, but he specifically told his supervisor that he did not need to prioritize and that he had up to 30 days to fulfill all of the orders. And specifically on page 139 and 140 of the record, it was asked of the witness whether Mr. Harding had said that he had 30 days to complete the request and could wait until the 29th day if he wanted to, and did he continually refuse to prioritize his orders? And the witness said, yes, Your Honor, yes. Mr. Harding was aware that he needed to prioritize. He was aware that the standard was essentially requiring two things of him. First, that he prioritized orders again based on how necessary they were for the veterans to receive. So a veteran who needed a wound closure device in order to allow his wound to heal, or a veteran that needed a wheelchair in order to be able to be discharged from the hospital and be able to go home, needed to be prioritized over other orders that were pending within his orders. And so ultimately his failure to do that was a violation of the standard which required prioritization. The second standard that Mr. Harding violated was the requirement that he reconcile all orders within 10 days of them being completed. The standard was as written, an absolute standard, as noted in the briefs and as well by the MSPD. However, the supervisor, Mr. Harding's supervisor, did elect to allow some leniency to that absolute standard. So tell me of your understanding of this item. What I understand his argument to be is everybody recognizes the standard is not workable or it's unreasonable. So we take the standard off the table. And then whatever different standard was created, what you call leniency, wasn't conveyed to him. So it was inherently unfair because he didn't know what the survived standards consisted of. That's what I understand his argument to be. I don't know if you understand it differently. I think that is what his argument is. So what is your response to that? The standard as written is absolute. And there is evidence in the record that it is a reasonable standard because other employees weren't able to attain it. In this case, the supervisor conceded that not every employee is perfect and not every employee works the best on every day. And so she did apply some leniency. She did say, yes, it is an absolute standard, but I'll give you the benefit of the doubt, and I'll allow you to mess up about three or five times. I'm going to inform you of when you're messing up. You need to correct that problem right away. And is the record clear that she informed him what then this revised standard was? No, she did not inform him that she, in her mind, was allowing some leniency on that. He was informed that this was an absolute standard. Not only did he fail to meet his three or five times there, the records were complete with information that he had 17 unreconciled charges that were over 10 days old at one point on page A174 of the record. He had a charge that was 126 days old, 117 days old, 355 days old. Again, all 179 to 180 and page 209 of the record. This was an instance where her attempt to make this attainable for him, even though other employees were satisfying the standard and it was reasonable and it is an absolute standard, which is permitted by the sports holding in Gilliboo, was simply, again, her effort to give her employees the benefit of the doubt as much as she could before telling them that they had failed the standard. And lastly, the last standard that he failed was the need to provide teamwork and customer service to all of his employees. Obviously, his failure to continually prioritize items, to fail to reconcile items, to require that his other coworkers take on some of his responsibilities in order to ensure that the goals of the veterans hospital were being met violated the standard. And for these reasons, they're an important question to be asked. That's the decision of the MSPB. Any questions? Okay. Thank you, Ms. Griffin. Your Honors, the respondent is simply incorrect that they defended that first standard of prioritization as anything other than an absolute standard. Given that there is no measure written into that standard, it says that you will prioritize. There are no exceptions allowed. However, if you look at the appendix, page 14, which is actually a citation to the initial decision, she cites some of the testimony the judge does in the conclusion, the real standard was that he would be permitted two to three errors or two to three occasions where he did not prioritize as the supervisor felt that he should. But this is never told to the appellate. For the reconciliation, the same is true. No one defended this as an absolute standard. And Gilliloo's is exactly the comparison case to demonstrate why you would not defend an absolute standard in this case. That case involved an engineer with a standard that was largely results-oriented in saying this block of projects needs to be completed within this period of time and this design needs to be accomplished. Here, we have someone in a high-volume clerical position. The point on all of these is that the law requires him, and this court has held to a high standard in idle, that he be told what the actual measure is. Even if that standard should be reasonable, you still have to tell him about it, and he has to have a fair opportunity to figure out how he's going to make that happen. And to tell him, we're going to impose an absolute standard, and then defend that by saying, well, we know that would be unreasonable, but we actually need something different, he can't do that. Idle stands for the proposition that if the standard is invalid and plainly invalid on its face, he can't cure that, in that case, even if you do go and tell the employee something. Here, they never even told the employee anything different, and they should not be allowed to have a surprise standard at the end of the day. Now, how much of a difference it would make? You know, that's going to depend on the individual employee. You have to remember that these particular job tasks were not all that he had to do. These are only the ones that wound up being the focus of the case because they're the ones that come back and tell him that he failed. And he's trying to gauge and adjust his workload accordingly, depending on what else he has going on, and prioritize, outside the context of that standard, what he's doing. And to come back and say, as the respondent briefed us, that it's irrelevant whether the real standard was communicated, and that's the word that they used. That's not the state of the law, and that's not the statute, and that's not this court's holdings in Iowa or Missouri, where all of them always speak about the importance of communicating the standard to the employee. Not a standard, but the actual, real standard that's being applied. And that was my point. Thank you. Thank you. Thank you. Case is taken into submission.